

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 4, 2015**

_____
**United States Bankruptcy Judge**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| CHOICE ATM ENTERPRISES, INC., D/B/A/ | § | |
| CHOICE ENTERPRISES, INC. & CHOICE | § | |
| ENTERPRISES, | § | |
| | § | CASE NO. 14-44982-DML |
| DEBTOR. | § | |

### MEMORANDUM OPINION AND ORDER

Before the court is *John Petrig's Motion for Relief from Automatic Stay* (the "Motion").[1] John Petrig ("Petrig" or "Movant"), filed the Motion on December 30, 2014. Choice ATM Enterprises, Inc. ("Choice" or "Debtor") filed *Debtor's Response to John Petrig's Motion for Relief from Automatic Stay* (the "Response") on January 6, 2015.[2] The court held a hearing on the

---

[1] Doc. No. 33. "Doc. No." refers to the documents filed in the above-captioned bankruptcy case (the "Case").

[2] Doc. No. 37.

Motion on January 22, 2015 (the "Hearing"). At the conclusion of the hearing, the court requested supplemental briefing on the application of the Automatic Stay under section 362 of the Bankruptcy Code (the "Code")[3] to the Case. Each party submitted a supplemental brief.[4]

For the reasons stated below, the court denies the Motion. Additionally, the court issues an injunction against Debtor's pursuit of the Choice Suit, as defined below.

The court exercises core jurisdiction over the Motion pursuant to the United States Code, title 28, sections 1334 and 157(b)(2)(G). This memorandum opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

## I. Background

Choice owns, operates, and services automated teller machines ("ATMs") in, *inter alia*, Texas, Oklahoma, and West Virginia at various hotels, casinos, racetracks, store fronts, and municipalities. Response ¶ 2. Petrig alleges that he procured contracts for Choice to place ATMs at some of the third parties' locations. Motion ¶ 3. Petrig alleges that Choice was obligated to pay him certain commissions from ATM transaction fees resulting from contracts he negotiated on Choice's behalf (the "Commission Agreement"). Motion ¶¶ 3 & 4. Petrig alleges that some time in or about December 2012, Choice ceased paying him commissions pursuant to the Commission Agreement. Motion ¶ 4.

---

[3] 11 U.S.C. §§ 101 *et seq.* "Automatic Stay" refers to the automatic stay provided in section 362 of the Code. All references to "title," "chapter," and "section" refer to Title 11 of the United States Code and its corresponding subdivisions unless otherwise noted.

[4] *Brief in Support of John Petrig's Motion for Relief from Automatic Stay*, Doc. No. 80 (the "Petrig Brief") and *Post-Hearing Brief with Respect to John Petrig's Motion for Relief from the Automatic Stay*, Doc. No. 81 (the "Choice Brief").

On June 18, 2013, Choice filed a complaint in the United States District Court for the Northern District of Oklahoma, Tulsa Division (the "Oklahoma District Court") requesting declaratory judgment to determine Choice's and Petrig's rights under the Commission Agreement (the "Choice Suit"). Motion, Ex. A. In response to the Choice Suit, Petrig filed counterclaims on April 28, 2014 for breach of contract, fraud, joint venture, breach of fiduciary duty, and quantum meruit/unjust enrichment (the "Counterclaims"). Motion, Ex. B.

The Oklahoma District Court set the Choice Suit and Counterclaims for trial on December 15, 2014. Motion ¶ 6. On December 3, 2014, Choice filed a Motion to Stay Proceedings and Notice of Impending Bankruptcy (the "Oklahoma Stay Motion").[5] On December 5, 2014, the Oklahoma District Court granted the Oklahoma Stay Motion.[6] On December 12, 2014, Choice filed a petition in this court for relief under chapter 11 of the Code.[7] On January 29, 2015, Choice filed *Choice['s] Motion for Voluntary Dismissal without Prejudice [of] the [Choice Suit]* (the "Withdrawal Motion") in the Oklahoma Proceeding.[8]

Petrig filed the Motion to request permission to continue the litigation in the Oklahoma Proceeding. Motion ¶ 7. Petrig asserts that his damages in the Oklahoma Proceeding could exceed $3 million, an amount which would constitute the largest single claim in the case and approximately half of Choice's debt, including secured debt. Motion ¶ 7.[9] Choice is opposed to the relief requested in the Motion and claims it filed this bankruptcy case in an effort to negotiate

---

[5] OK Doc. No. 115. "OK Doc. No." refers to documents filed in the Oklahoma District Court in Case No. 4:13-CV-359-JED-TLW (the "Oklahoma Proceeding").

[6] OK Doc. No. 118.

[7] Doc. No. 1.

[8] OK Doc. No. 120.

[9] *See also Debtor's Schedules D, E & F*, Doc. No. 77.

and reorganize its debts. Response ¶¶ 5, 6. If Choice is unable to negotiate its debt with Petrig, it urges the court to determine the claim in bankruptcy using the claims estimation process under section 502(c) of the Code rather than grant Petrig relief from the Automatic Stay. Response ¶ 11.

## II. Discussion

### A. *Disaggregation*

"As the statute clearly indicates, section 362(a) only stays those 'proceeding[s] against the debtor[.]'" *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 366 (5th Cir. 1993) (quoting the statutory language and citing *Freeman v. Comm'r of Internal Rev.*, 799 F.2d 1091, 1092-93 (5th Cir. 1986)). "[C]ounterclaims asserted by a debtor are not actions 'against the debtor' which are subject to the automatic stay." *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc. (In re U.S. Abatement Corp.)*, 39 F.3d 563, 568 (5th Cir. 1994); s*ee also First Wis. Nat'l Bank of Milwaukee v. Grandlich Dev. Corp.*, 565 F.2d 879, 880 (5th Cir. 1978) (construing a substantially similar predecessor to section 362).

Courts determine "whether a proceeding is 'against the debtor' by 'examin[ing] the posture of the case at the initial proceeding.'" *Adler v. Bell (In re Versoy)*, 306 F. App'x 65, 68-69 (5th Cir. 2009) (citing *McMillan*, 4 F.3d at 366 and *Freeman*, 799 F.2d at 1093); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). Multiple claims within a single case are disaggregated for purposes of automatic stay analysis. *Maritime*, 959 F.2d at 1204; *In re Mid-City Parking, Inc.*, 332 B.R. 798, 807 (Bankr. N.D. Ill. 2005). "Within a single case, some actions may be stayed, others not." *Maritime*, 959 F.2d at 1204.

The Oklahoma Proceeding consists of two distinct components: the Choice Suit and the Counterclaims. This court will follow the approach developed in *Maritime* and disaggregate the

claims within the Oklahoma Proceeding for separate analysis. *See Maritime*, 959 F.2d at 1204. Different standards govern the disposition of each component of the Oklahoma Proceeding, so the court will evaluate the application of the Automatic Stay to the Counterclaims first, followed by an analysis of whether to issue an injunction against the Choice Suit.

### B. Motion for Relief from Automatic Stay

1. <u>Standard</u>

The Code provides that a bankruptcy petition operates as a stay of the continuation of a judicial proceeding against the debtor to collect or recover a claim that arose before the commencement of the case. 11 U.S.C. § 362(a)(1), (6). The Automatic Stay is designed to protect a debtor's assets for equitable distribution to creditors in lieu of a race to the courthouse. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005); *McMillan*, 4 F.3d at 366 (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)). Put another way, "[t]he automatic stay is intended to benefit creditors collectively by preventing individual creditors from acting unilaterally to the detriment of other creditors." *Mid-City Parking,* 332 B.R. at 815; *see also Chesnut*, 422 F.3d at 301.

A bankruptcy court may terminate, annul, lift or condition the Automatic Stay. 11 U.S.C. § 362(d). After notice and a hearing, the court shall grant relief to a party in interest from the Automatic Stay for cause. 11 U.S.C. § 362(d)(1). Though "cause" within the context of Section 362(d)(1) is undefined, courts consider numerous factors when determining if a request for relief from the Automatic Stay is appropriate. *See In re Laventhol & Horwrath*, 139 B.R. 109, 116 (S.D.N.Y. 1992) (citing H.R. REP. No. 95-595, 343-44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300)). "Cause" is a broad concept that is intentionally flexible so that courts may respond

to different or unique circumstances. *Mooney v. Gill*, 310 B.R. 543, 546-47 (N.D. Tex. 2002) (quoting *In re Sentry Park, Ltd.,* 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)).

In general, section 362(d) gives bankruptcy courts "flexibility to address specific exigencies on a case-by-case basis." *Chesnut*, 422 F.3d at 303-04. Before this court can lift the Automatic Stay, it must weigh the hardships to the parties and the goals of the Bankruptcy Code. *Mooney*, 310 B.R. at 546 (citing *In re Cardinal Industries, Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990)). Congress itself provided some guidance as to what constitutes "cause," specifically mentioning "a desire to permit an action to proceed to completion in another tribunal" and "the lack of connection with or interference with the pending bankruptcy case." H.R. REP. No. 95-595, 343-44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300.

When applying section 362(d)(1) to requests to proceed with litigation outside of bankruptcy, courts utilize varying methodologies. *See* BLOOMBERG LAW: BANKR. TREATISE, pt.1, ch. 45: § 362 at VIII.C.2 (Hon. D. Michael Lynn et al. eds., 2015). Some courts begin with the widely-applied twelve factors outlined in *Curtis*[10] and then apply the factors the court finds

---

[10] The *Curtis* factors are:

    (1) Whether the relief will result in a partial or complete resolution of the issues.
    (2) The lack of any connection with or interference with the bankruptcy case.
    (3) Whether the foreign proceeding involves the debtor as a fiduciary.
    (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
    (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
    (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
    (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties.
    (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
    (9) Whether movant's success in the foreign proceeding would result in judicial lien avoidable by the debtor under Section 522(f).
    (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

relevant to the case before it. *See, e.g., Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990) (listing the twelve *Curtis* factors and applying the four relevant factors). Some courts have adopted the seven factors enumerated in *Johnson*,[11] which are also specifically tailored to requests to lift the Automatic Stay to proceed with litigation. *See, e.g., Edmondson v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 148 B.R. 920, 923 (Bankr. D. Ariz. 1993) (applying the *Johnson* factors).

Many subsequent cases have relied on a mixture of factors from both cases, using the factors appropriate to the circumstances of the case. *See*, *e.g.*, *In re United Imports, Inc.*, 203 B.R. 162, 167 (Bankr. D. Neb. 1996) (adopting factors drawn from *Curtis* and *Johnson*); *Blan v. Nachogdoches Cnty. Hosp. (In re Blan)*, 237 B.R. 737, 739-40 (8th Cir. B.A.P. 1999) (same); *Truebro, Inc. v. Plumberex Specialty Prods. (In re Plumberex Specialty Prods.)* 311 B.R. 551, 558

---

    (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
    (12) The impact of the stay on the parties and the 'balance of hurt.

*In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984) (citations for each factor omitted).

[11] The *Johnson* factors are:

    1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;
    2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter;
    3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial was deferred;
    4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;
    5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit;
    6. Whether the creditor has a probability of success on the merits;
    7. And . . . whether the interests of the debtor and the estate would be better served by the resolution of the threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989) (citations for each factor omitted).

n. 12 (Bankr. S.D. Cal. 2004) (adopting *Curtis* factors and noting the *Johnson* factors); *Smith v. Tricare Rehab. Sys., Inc. (In re Tricare Rehab. Sys., Inc.)*, 181 B.R. 569, 573-74 and n. 9 (Bankr. N.D. Ala. 1994) (comparing *Curtis* and *Johnson* factors, correlating many of them, and applying several relevant factors).

Another approach to "cause" analysis requires courts to apply a narrow range of factors mechanically to every case. *Compare In re White*, 410 B.R. 195, 200-01 (Bankr. W.D. Va. 2008) (describing the three factors used as "required" by the Fourth Circuit in *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992)) *with Curtis*, 40 B.R. at 800 (describing twelve factors that "may be considered"). Under this approach, courts evaluate whether: (1) the stayed claims involve only state law, (2) the interests of judicial economy and an effective reorganization are served without lifting the stay, and (3) the estate can be properly protected if the stay is lifted. *White*, 410 B.R. at 200-01.

Even among bankruptcy courts in this circuit, no single approach prevails. One court focused solely on whether lifting the Automatic Stay would (1) be a "great prejudice" to the estate or debtor and (2) whether the hardship caused to the movant "considerably outweighs" the hardship to the debtor by continuing the stay. *In re Fowler*, 259 B.R. 856, 860 (Bankr. E.D. Tex. 2001). Some courts have lifted the Automatic Stay based on judicial economy grounds alone. *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing *In re U.S. Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994)). Another court did not specifically enumerate factors to consider but simply "balance[d] the hardships of the parties." *Mooney,* 310 B.R. at 546.

In *U.S. Brass*, the bankruptcy court lifted the stay to allow an appeal to proceed to the Supreme Court of Texas to address an issue involving the scope of Texas's Deceptive Trade

Practices Act. *U.S. Brass,* 176 B.R. at 13. The bankruptcy court concluded that lifting the stay would not prejudice the parties, the costs to the debtor were minimal, and the Texas Supreme Court was the best venue to determine the state law issue. *Id*. In *Mooney*, the bankruptcy court lifted the Automatic Stay to allow the movant to pursue its claims against the debtor. *Mooney*, 310 B.R. at 547. The court determined (1) the property that was the subject of the dispute was not part of the estate, therefore the debtor had no interest in it, and (2) the actions of the debtor while acting in a fiduciary capacity were "egregious." *Id*. at 547-48. Other courts, however, have refused to lift the stay absent these unusual circumstances. *See, e.g., In re Telegroup, Inc.*, 237 B.R. 87, 95-96 (Bankr. D.N.J. 1999) (finding that the burden on the debtors to litigate in the movant's chosen forum outweighed the benefit to the movant); *In re Lapeyre*, Case No. 99-1312, 1999 WL 486888, at *6 (E.D. La. July 8, 1999) (finding that the movant's desire for a jury trial was not a compelling factor and that the bankruptcy court would avoid unnecessary expense and delay).

2. *Application of Section 362(d) to Counterclaims*

"Ultimately, the granting of relief from the automatic stay is left to the discretion of the Bankruptcy Court and decided on a case by case basis." *Fowler*, 259 B.R. at 858; *see also Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982) ("[T]he statute commits the decision of whether to lift the stay to the discretion of the bankruptcy judge. . ."); *accord Mooney*, 310 B.R. at 547 and *Xenon Anesthesia*, 510 B.R. at 112. There is no mandatory standard for finding "cause" in the Fifth Circuit. *See Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006) ("[I]n the past we have noted that this lack of definition [of "cause" in the Code] affords 'flexibility to the bankruptcy courts,'" quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir.

1986)). Therefore, this court will proceed by identifying and then balancing the factors it deems relevant to determining whether cause exists to lift the Automatic Stay.

In this case, the court will consider whether: (1) judicial economy is better achieved through continuing the litigation in district court or estimating the claims in bankruptcy court, (2) either forum avoids unnecessary expense and delay, (3) the claim is critical to the success or failure of the reorganization, and (4) the nature of the claim requires expertise beyond the abilities of the bankruptcy court. For the reasons set forth below, the court declines to lift the Automatic Stay.

### a. Judicial Economy

"The Bankruptcy Code and Rules implement a speedy, efficient and economical method for the determination and allowance of claims." *Curtis*, 40 B.R. at 801 and n.7 (referring to Code section 502(c)). The Supreme Court "has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'" *Katchen v. Landy*, 382 U.S. 323, 328-29 (1966) (citing *Ex parte Christy*, 44 U.S. 292, 312 (1845) and discussing Congress's intent to expedite the determination of claims in bankruptcy).

The interests of judicial economy favor proceeding through the claims estimation process in bankruptcy court rather than litigation in the Oklahoma District Court. Choice and Petrig are at a stage in the litigation where discovery and pre-trial motions between the parties are complete but trial has not yet begun. Motion ¶¶ 5, 6. Petrig has made no argument that litigation in the bankruptcy would be burdensome, only that the Oklahoma District Court is ready to begin trial, though Petrig has offered no proof as to when that trial would begin.

Under these circumstances, the parties can use the previously completed discovery without redundancy to assist the court in liquidating the Counterclaims through estimation. There is no

judicial inefficiency inherent in proceeding in the bankruptcy court. Indeed, Congress's design has provided quite the opposite—the Code's highly efficient claims estimation process may improve Debtor's chances at a reorganization through an accelerated process without significantly harming Petrig.

### b. Unnecessary Expense and Delay

The costs to continue the Oklahoma Proceeding would be a greater burden on the estate than to estimate the claims through the bankruptcy court. Choice alleges that to litigate the Counterclaims would require a significant and costly time commitment from officers of Choice to prepare for, attend and testify at trial. Response ¶4. Choice alleged at the Hearing that it has not yet prepared for trial because it decided it would file for bankruptcy a month before the trial date. Petrig offers no alternative considerations to balance against Choice's concerns, only flatly alleging that "it will promote judicial economy" to lift the Automatic Stay. *See* Motion ¶ 7. Thus, neither party has argued that proceeding in the bankruptcy court would cause unnecessary expense or delay. Since the bankruptcy court could adopt procedures to govern the claims estimation process, the bankruptcy court can flexibly fashion these procedures where possible to accommodate Movant and Debtor without causing unnecessary expense or delay. *See Addison v. Langston*, *(In re Brints Cotton Mktg., Inc.)*, 737 F.2d 1338, 1341 (5th Cir. 1984) ("In estimating a claim, the bankruptcy court should use whatever method is best suited to the circumstances."); *see also generally* BLOOMBERG LAW: BANKR. TREATISE, pt.2, ch. 51: § 502 at V.B (2015).

### c. Claim Critical to Reorganization

Petrig's Counterclaims against Choice are critical to the reorganization because Petrig's alleged $3,000,000 in damages, if his claim is allowed in that amount, would be the largest claim against the estate. Motion ¶7. Two primary purposes underlie chapter 11 of the Code: preserving

going concerns and maximizing property available to satisfy creditors. *Bank of Am. N.A. v. 203 N. LaSalle Street P'ship*, 526 U.S. 434, 453 (1999) (citing *Toibb v. Radloff*, 501 U.S. 157, 163 (1991)). The Automatic Stay works in concert with chapter 11 to achieve these goals. *See* BLOOMBERG LAW: BANKR. TREATISE, pt.1, ch. 45: § 362 at II, text accompanying n. 6 – 8 (2015). Lifting the Automatic Stay to permit the Counterclaims to go forward in district court would go against Congress's design in the Code.

By retaining the Counterclaims, this court can rapidly proceed through the claims estimation process and impose a lesser burden on Choice's management and avoid the aforementioned unnecessary delay and expense. Given that the Counterclaims are critical to Debtor's reorganization, the importance of retaining the Counterclaims within the Case is magnified.

### d. Issue within Expertise of Bankruptcy Court

This court is the proper venue to estimate the Counterclaim under section 502(c) of the Code. *See Addison*, 737 F.2d at 1340-41 ("In enacting the Bankruptcy Code of 1978, Congress intended that all claims, including unliquidated and contingent claims, be 'dealt with' in the bankruptcy proceeding," citing S. REP. No. 95-989, at 65 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5758, 5808). Unlike the state-law claims in *U.S. Brass Corp.*, which dealt with the previously untested limits of the scope of a state statute and which had already been granted a hearing date in a state supreme court, the Counterclaims here do not present any issues beyond the expertise of the bankruptcy court. *See U.S. Brass,* 176 B.R. at 13. The parties here, a debtor-in-possession and a potential claimant against the estate, have been litigating what is now a disputed claim against the bankruptcy estate. Congress created the bankruptcy court to provide a venue for disputes like this one. *See* S. REP. No. 95-989, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808.

3. *Conclusion: Counterclaims Stayed*

Section 502(c) and its legislative history make clear that Congress intended bankruptcy courts to handle disputes—like those raised by the Counterclaims—in an expedited manner to accomplish the goals of preserving going-concern value for the benefit of not just debtors, but their creditors as well. *See Addison*, 737 F.2d at 1340-41 (citing S. REP. No. 95-989, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808). Given the size of the Counterclaims and the concomitant importance of their resolution to Debtor's reorganization, it is the opinion of this court that the Counterclaims should be decided in the bankruptcy court under the Code. Therefore, the court denies Petrig's motion for relief from the Automatic Stay.

C. **Injunctions under Code Section 105(a)**

1. *Standard*

This court may issue any order, even *sua sponte*, that is necessary or appropriate to carry out the provisions of the Code, to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (citations omitted); *accord* 1 NORTON BANKR. L. & PRAC. 3d § 13:1 (2015); COLLIER ON BANKR. ¶ 105.01[2] (16th ed. 2012); BLOOMBERG LAW: BANKR. TREATISE, pt.1, ch. 5: § 105 at III.C (2015). Section 105(a) grants bankruptcy judges "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Sanchez v. Ameriquest Mortg. Co.(In re Sanchez)*, 372 B.R. 289, 309 (Bankr. S.D. Tex. 2007) (quoting *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007)). It permits the court to take actions necessary to "protect the integrity of the

bankrupt's estate." *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 713 (9th Cir.1986). The section also empowers the court "to enjoin suits that might impede the reorganization process." *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.1988) (citations omitted).

Similarly, the Fifth Circuit has held that section 105(a) is to be "interpret[ed] liberally," so long as any action taken pursuant to section 105(a) is "consistent with the rest of the Bankruptcy Code." *Feld v. Zale Corp (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995). Therefore, section 105(a) permits bankruptcy courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code." *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) (quoting *Chiasson v. Bingler (In re Oxford Mgmt. Inc.)*, 4 F.3d 1329, 1333-1334 (5th Cir. 1993)).

2. *Application of Section 105(a) to the Choice Suit*

At the Hearing, Choice agreed to a court-ordered injunction against further litigation in the Oklahoma Proceeding. Although the court accepts Debtor's disinterest in pursuing the Choice Suit, the court notes that the Withdrawal Motion in the Oklahoma District Court is without prejudice to refiling. It is the opinion of this court that an injunction against Debtor's further pursuit of the Choice Suit would be equitable and just. Therefore, the court will enjoin Choice from pursuing its request for declaratory judgment related to the alleged contract (or lack thereof) between Choice and Petrig until further order of this court.[12]

---

[12] Petrig argued that the Automatic Stay applies to debtor lawsuits for declaratory judgment, because such suits are as likely to produce a result against the estate as for the estate. Petrig Brief ¶¶ 8 & 9. Because Debtor has agreed to the entry of an injunction in this case, the court will not decide upon the applicability of the Automatic Stay to the Choice Claim.

### III. Conclusion

For the reasons set forth above, this court orders that *John Petrig's Motion for Relief from Automatic Stay* is **DENIED**. The court further orders that Debtor is **ENJOINED** from pursuing its claims as asserted in the Oklahoma Proceeding until further order of this court.

### ### END OF MEMORANDUM OPINION AND ORDER ###